1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11

12 ADOBE SYSTEMS INCORPORATED,      Case No. 14-CV-02147-LHK

13             Plaintiff,                   **ORDER DENYING MOTION TO**

14        v.                               **DISMISS**

                                         Re: Dkt. No. 64

15 BLUE SOURCE GROUP, INC.,

16             Defendant.

17

18        Plaintiff Adobe Systems Inc. ("Adobe") brings the instant lawsuit against Defendant Blue

19 Source Group, Inc. ("Blue Source"), alleging causes of action for trademark infringement under 15

20 U.S.C. § 1114; false designation of origin, false or misleading advertising, and unfair competition,

21 all in violation of 15 U.S.C. § 1125(a); trademark dilution in violation of 15 U.S.C. § 1125(c);

22 copyright infringement under 17 U.S.C. § 501(a); and violation of the unlawful, unfair, and

23 fraudulent prongs of California's Unfair Competition Law, Business and Professions Code

24 §§ 17200 *et seq.* ("UCL"). Second Amended Complaint, ECF No. 42-1 ("SAC"), at 1. Before the

25 Court is Blue Source's motion to dismiss Adobe's Second Amended Complaint in its entirety.

26 ECF No. 64 ("Motion"). Adobe opposes the Motion. ECF No. 65 ("Opposition"). Pursuant to

27 Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral

28

1

United States District Court
Northern District of California

United States District Court
Northern District of California

1  argument, and hereby VACATES the hearing on this matter currently scheduled for September 17,

2  2015, at 1:30 p.m. The case management conference also scheduled for September 17, 2015 at

3  1:30 p.m. remains as set. Having considered the parties' submissions, the relevant law, and the

4  record in this case, the Court DENIES Blue Source's Motion, for the reasons stated below.

5  **I.   BACKGROUND**

6      **A.   Factual Background**

7          **1.   The Parties and Adobe's Trademarks and Copyrights**

8          Adobe is a Delaware corporation with its principal place of business in San Jose,

9  California, and is a maker of computer software. SAC ¶ 1. According to the Second Amended

10  Complaint, Blue Source is a corporation organized under the laws of Maryland, with its principal

11  place of business in Olney, Maryland.[1] *Id.* ¶ 10.

12          According to the Second Amended Complaint, Adobe is "a global leader in developing

13  and distributing innovative computer software," and Adobe-branded software is well-known to

14  consumers, distributors, and other purchasers. *Id.* ¶¶ 23-25. Adobe has secured trademark

15  registrations from the U.S. Patent and Trademark Office for various marks, including Adobe,

16  Acrobat, Adobe Premiere, After Effects, Captivate, Creative Suite, Dreamweaver, Fireworks,

17  Flash, Flash Builder, Flash Catalyst, Illustrator, Indesign, Lightroom, and Photoshop (collectively,

18  "Adobe-Branded Software"). *Id.* ¶ 28. Adobe has also secured copyright registrations from the

19  U.S. Copyright Office for various copyrights, including for versions of Adobe-Branded Software.

20  *Id.* ¶ 29. Adobe has expended "substantial time, money and effort" to build and develop consumer

21  recognition, awareness, and goodwill in Adobe-Branded Software. *Id.* ¶ 24. As a result of Adobe's

22

23

24  ---

[1] In the Motion, Blue Source stated that it is a Colorado corporation. Mot. at 2; *see also* Exhibit C
25  to Declaration of Jared Abramson in Support of Blue Source Group, Inc.'s Motion, ECF No. 64-1
("Abramson Decl." or "Abramson Declaration") (certificate from Office of the Secretary of State
26  of the State of Colorado, stating that Blue Source "is a Corporation formed or registered on
9/16/2009 under the law of Colorado"). Adobe, in its Opposition, attached a Statement Changing
27  the Principal Office Address, filed by Blue Source with the Colorado Secretary of State on
February 26, 2013, stating that Blue Source relocated its principal office from Olney, Maryland to
28  Colorado. Exhibit E to Declaration of Nicole Drey in Support of Adobe's Opposition, ECF No.
65-1 ("Drey Decl.").

Case No.14-CV-02147-LHK
ORDER DENYING MOTION TO DISMISS

efforts, the widespread use of Adobe's software, and the quality of Adobe's products, "[c]onsumers, purchasers and members of the public have become familiar with [Adobe's] software and other products and services and have come to recognize Adobe-Branded Software and the associated marks thereto and associate them exclusively with [Adobe]." *Id.* ¶ 26.

Adobe imposes restrictions on the distribution of all its software, including Adobe-Branded Software. *Id.* ¶ 30. According to Adobe, "[e]very piece of Adobe-Branded Software is licensed" pursuant to a Software License Agreement ("SLA"), and every piece of Adobe-Branded Software is subject to restrictions on use, location of distribution, transfer, and in some circumstances who is qualified to obtain the product. *Id.* For instance, Original Equipment Manufacturer ("OEM") versions of Adobe-Branded Software are intended to be distributed only with approved hardware components as a bundle, and OEM software may not be unbundled or resold without violating the SLA. *Id.* ¶ 31. Likewise, Adobe-Branded Software intended for academic or educational use ("EDU Software" or "EDU") is intended only for buyers associated with educational institutions. *Id.* ¶ 32. Therefore, EDU Software may only be distributed by certain distributors to customers who provide proof of qualification, and EDU Software may not be resold without violating the SLA. *Id.* Adobe also alleges that it distributes versions of its software via Electronic Software Download ("ESD"). *Id.* ¶ 34. A reseller must be specifically authorized by Adobe to sell ESD versions of Adobe's software, or else such distribution violates the SLA. *Id.*

### 2. Prior Litigation

The instant litigation stems from a distribution contract entered into between Adobe and former Defendants SoftwareMedia.com, Inc., a company with its principal place of business in Salt Lake City, Utah, and Adam Childers, the president of SoftwareMedia.com, Inc. (collectively, "SoftwareMedia Defendants"). *Id.* ¶¶ 2, 7, 36. At some point prior to the instant litigation, Adobe and the SoftwareMedia Defendants entered into an Adobe Partner Connection Program Reseller Agreement ("APCPRA"). *Id.* ¶ 36.

On August 13, 2010, Adobe filed a lawsuit against the SoftwareMedia Defendants in the

3

1    Northern District of California before U.S. District Judge Jeffrey White, *Adobe System Inc. v.*

2    *Childers et al.*, Case No. 3:10-CV-03571-JSW ("*Adobe I*"). *Id.* ¶ 38. In *Adobe I*, Adobe alleged

3    that the SoftwareMedia Defendants breached the APCPRA by "offering for sale, selling,

4    importing and distributing unauthorized foreign-made and/or EDU copes of Adobe-Branded

5    Software." *Id.* On July 29, 2011, Adobe and the SoftwareMedia Defendants entered into a release

6    and settlement agreement ("*Adobe I* Settlement"), which was signed on October 6, 2011. *Id.* ¶ 39.

7    Pursuant to the *Adobe I* Settlement, the SoftwareMedia Defendants agreed not to infringe Adobe's

8    trademarks and copyrights. *Id.* ¶ 40. Adobe and the SoftwareMedia Defendants also stipulated to a

9    permanent injunction that restrained and enjoined the SoftwareMedia Defendants from infringing

10   Adobe's trademarks and copyrights, including via distribution of OEM, EDU, or foreign-made

11   Adobe-Branded Software outside of the scope of Adobe's licensing restrictions. *Id.* On October

12   14, 2011, Judge White dismissed *Adobe I* with prejudice. *Id.*

### B. Procedural Background

#### 1. Adobe Files the Instant Litigation, and the SoftwareMedia Defendants File a Third-Party Complaint Against, Among Others, Blue Source

On May 9, 2014, Adobe filed the instant litigation against the SoftwareMedia Defendants

only. *See* ECF No. 1 ("Compl."). In the original Complaint, Adobe alleged that the SoftwareMedia

Defendants again breached the terms of the APCPRA by "order[ing] Adobe Creative Suite

software products from unauthorized distributors" and "offering for sale, selling, and distributing

licenses for counterfeit and/or unauthorized education software to non-education end users." *Id.*

¶ 31. Adobe alleged causes of action for trademark infringement; false designation of origin, false

or misleading advertising, and unfair competition; trademark dilution; copyright infringement;

violation of the UCL; and breach of contract. *Id.* at 1.

On November 10, 2014, Adobe and the SoftwareMedia Defendants filed a stipulation

permitting Adobe to file a First Amended Complaint, which added additional factual allegations

and a seventh cause of action alleging that the SoftwareMedia Defendants breached the *Adobe I*

Settlement. ECF No. 29; ECF No. 29-1, ¶¶ 104-08. Also pursuant to the stipulation, the

United States District Court
Northern District of California

4

Case No.14-CV-02147-LHK
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

SoftwareMedia Defendants filed a Third-Party Complaint alleging that JHS Enterprises, Inc. ("JHS"), United Prospects, Inc. ("UPI"), Bea's Hive LLC, and Blue Source sold the SoftwareMedia Defendants software which infringed Adobe's copyrights and trademarks. ECF No. 29, at 2; ECF No. 29-2, ¶¶ 21-23. The SoftwareMedia Defendants alleged causes of action against JHS, UPI, Bea's Hive LLC, and Blue Source for breach of warranty against infringement pursuant to Utah Code § 70A-2-312(c); breach of express/implied contracts; breach of covenant of good faith and fair dealing; and intentional and/or negligent misrepresentations and omissions. *Id.* ¶¶ 10-45.

### 2. Adobe Files the Second Amended Complaint

On February 2, 2015, Adobe and the SoftwareMedia Defendants stipulated to Adobe's filing of the Second Amended Complaint, the operative Complaint in this matter. ECF No. 42. The Second Amended Complaint added UPI, JHS, and Blue Source as defendants to Adobe's suit, (collectively, with the SoftwareMedia Defendants, "Defendants"). *See* SAC ¶¶ 8-10. In the SAC, Adobe added allegations against UPI, JHS, and Blue Source, including that UPI, JHS, and Blue Source were "jointly, severally and concurrently liable and responsible" for the infringing conduct of each other named Defendant, because UPI, JHS, and Blue Source supplied the SoftwareMedia Defendants with infringing Adobe software. *Id.* ¶¶ 12, 43.

Adobe further alleged that all Defendants, including Blue Source, "alter[ed], unbundle[d], and/or change[d] the components of OEM copies of Adobe-Branded Software, before offering for sale, selling and/or distributing these OEM copies to resellers and end users in the United States and within this judicial district." *Id.* ¶ 45. Adobe alleged that all the named Defendants "are not authorized distributors and/or resellers of OEM copies of Adobe-Branded Software." *Id.* Adobe also claimed that all the Defendants offered for sale, sold, or distributed (1) unauthorized EDU copies of Adobe-Branded Software; (2) ESD copies of Adobe-Branded Software; and (3) copies of Adobe-Branded Software intended for international distribution, all without authorization and in violation of the scope of Adobe's licensing restrictions. *Id.* ¶¶ 46-48. Adobe further alleged that all the Defendants offered for sale, sold, or distributed such infringing software to resellers and

1    end users in the United States and within the Northern District of California. *Id.*

2           As to Adobe's causes of action, against all the Defendants Adobe alleged causes of action

3    for (1) trademark infringement pursuant to 15 U.S.C. § 1114; (2) false designation of origin, false

4    or misleading advertising, and unfair competition, all in violation of 15 U.S.C. § 1125(a); (3)

5    trademark dilution in violation of 15 U.S.C. § 1125(c); (4) copyright infringement in violation of

6    15 U.S.C. § 1125(c); and (5) violation of the UCL. *Id.* ¶¶ 60-101. Against the SoftwareMedia

7    Defendants only, Adobe alleged causes of action for breach of the APCPRA contract, and breach

8    of the settlement in *Adobe I. Id.* ¶¶ 102-111.

9           On March 2, 2015, the SoftwareMedia Defendants voluntarily dismissed the Third-Party

10   Complaint against JHS, UPI, Bea's Hive LLC, and Blue Source. ECF No. 52. On March 16, 2015,

11   Adobe dismissed the SoftwareMedia Defendants from the instant lawsuit. ECF No. 57.

12   Accordingly, as of March 16, 2015, the remaining Defendants in the instant lawsuit were JHS,

13   UPI, and Blue Source. *See* SAC. Against these Defendants, Adobe asserted causes of action for:

14   (1) trademark infringement pursuant to 15 U.S.C. § 1114; (2) false designation of origin, false or

15   misleading advertising, and unfair competition, all in violation of 15 U.S.C. § 1125(a); (3)

16   trademark dilution in violation of 15 U.S.C. § 1125(c); (4) copyright infringement in violation of

17   15 U.S.C. § 1125(c); and (5) violation of the UCL. *Id.* ¶¶ 60-101.

18          **3.   Blue Source Files the Instant Motion**

19          On May 11, 2015, Blue Source filed the instant Motion, moving to dismiss all the causes

20   of action in the Second Amended Complaint on numerous grounds. *See* Mot. First, Blue Source

21   argued that Adobe's allegations impermissibly lumped all the named Defendants together such

22   that Adobe failed to put Blue Source on notice of the claims against it, in violation of Federal Rule

23   of Civil Procedure 8. *Id.* at 6-7. Second, pursuant to Rule 12(b)(6), Blue Source contended that

24   Adobe failed to state a claim under all seven of Adobe's causes of action because Adobe either did

25   not make sufficient factual allegations, did not plead the necessary elements of the causes of

26   action, or because the allegations were contradicted by a declaration and exhibits attached to Blue

27   Source's Motion. *Id.* at 8-15. Third, also pursuant to Rule 12(b)(6), Blue Source moved to dismiss

28

Case No.14-CV-02147-LHK
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

1   Adobe's allegation of joint and several liability on the grounds that it was insufficiently pled. *Id.* at

2   15-17. Fourth, Blue Source moved pursuant to Rule 12(b)(2) to dismiss the Second Amended

3   Complaint for lack of personal jurisdiction. *Id.* at 18-22. Fifth, Blue Source moved pursuant to

4   Rule 12(b)(3) to dismiss for improper venue. *Id.* at 22-24. In conjunction with the Motion, Blue

5   Source filed a supporting declaration with three attached exhibits. ECF No. 64-1.

6           On May 26, 2015, Adobe filed its Opposition. ECF No. 65. In conjunction with the

7   Opposition, Adobe filed two supporting declarations and five attached exhibits. ECF Nos. 65-1,

8   65-2, 65-3 & 65-4. On June 2, 2015, Blue Source filed a reply in support of the Motion. ECF No.

9   66. Blue Source also filed a declaration with three attached exhibits. ECF Nos. 66-1, 66-2 & 66-3.

10          **4.   Adobe Dismisses All Defendants Except Blue Source**

11          On June 23, 2015, Adobe voluntarily dismissed JHS from this lawsuit. ECF No. 78. On

12   June 26, 2015, Adobe voluntarily dismissed UPI as a defendant in the instant litigation. ECF No.

13   79. As part of the dismissal of UPI, Adobe and UPI stipulated to the entry of a permanent

14   injunction which prohibited UPI from, *inter alia*, infringing any of Adobe's trademarks or

15   copyrights. ECF No. 79-1. Currently, Blue Source is the sole remaining Defendant in this lawsuit.

16   **II.  LEGAL STANDARD**

17          **A.   Motion to Dismiss Pursuant to Rule 12(b)(6)**

18          Federal Rule of Civil Procedure 8(a) requires that a complaint contain, *inter alia*, "a short

19   and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

20   Pursuant to Rule 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough

21   facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

22   544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that

23   allows the court to draw the reasonable inference that the defendant is liable for the misconduct

24   alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more

25   than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662,

26   678 (2009) (internal citation omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court

27   "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light

28

1   most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d

2   1025, 1031 (9th Cir. 2008). However, mere "conclusory allegations of law and unwarranted

3   inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183

4   (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Moreover, "a plaintiff may plead [him]self out of

5   court" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v.

6   Cnty. of L.A.*, 119 F.3d 778, 783 n. 1 (9th Cir. 1997).

7   **B.  Motion to Dismiss Pursuant to Rule 12(b)(3) for Lack of Personal Jurisdiction**

8        When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the

9   plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *Schwarzenegger v.

10  Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Where, as here, the defendant's

11  motion is based on written materials rather than an evidentiary hearing, the plaintiff need only

12  make a *prima facie* showing of jurisdictional facts to withstand a motion to dismiss for lack of

13  personal jurisdiction. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir.

14  2011) (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir.

15  2010)). In ruling on a Rule 12(b)(3) motion, "[t]he court may consider evidence presented in

16  affidavits to assist it in its determination and may order discovery on the jurisdictional issues."

17  *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). In addition, "uncontroverted allegations

18  in plaintiff's complaint must be taken as true, and conflicts between the facts contained in the

19  parties' affidavits must be resolved in plaintiff's favor." *Brayton Purcell*, 606 F.3d at 1127.

20        When there is no applicable federal statute governing personal jurisdiction, as is the case

21  here, the law of the forum state determines personal jurisdiction. *Schwarzenegger*, 374 F.3d at

22  800. California's long arm statute, which determines personal jurisdiction, is coextensive with

23  federal due process requirements, and therefore the analysis for personal jurisdiction is the same

24  under both state and federal law. *Id.* at 800-01; Cal. Code Civ. Pro. § 410.10. A court may exercise

25  personal jurisdiction over a non-resident defendant only when the defendant has "'minimum

26  contacts'" with the forum state such that jurisdiction "'does not offend traditional notions of fair

27  play and substantial justice.'" *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Wash.*,

28

Case No.14-CV-02147-LHK
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

326 U.S. 310, 316 (1945)). This "minimum contacts" requirement can be satisfied by establishing general jurisdiction or specific jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). Only specific jurisdiction is at issue here. Opp'n at 11-12.

For specific personal jurisdiction, the Ninth Circuit has adopted a three-part test that requires the plaintiff to show that: (1) the defendant purposefully directed its activities at residents of the forum or purposefully availed itself of the privilege of doing business in the forum; (2) the plaintiff's claim arises out of or relates to those activities; and (3) the assertion of personal jurisdiction is reasonable and fair. *Schwarzenegger*, 374 F.3d at 802. It is the plaintiff's burden to plead allegations satisfying the first two prongs. *Id.* If the plaintiff does so, the burden then shifts to the defendant to show why the exercise of personal jurisdiction would not be reasonable and fair. *Id.* "So long as it creates a substantial connection with the forum, even a single act can support jurisdiction," but those acts must not "create only an attenuated affiliation with the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n. 18 (1985).

### C. Motion to Dismiss Pursuant to Rule 12(b)(3) for Improper Venue

Under Federal Rule of Civil Procedure 12(b)(3), a defendant may move to dismiss a complaint for improper venue. Once the defendant has challenged the propriety of venue in a given court, the plaintiff bears the burden of showing that venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). When considering a motion to dismiss for improper venue, a court may consider facts outside of the pleadings. *Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004). Pursuant to 28 U.S.C. § 1406(a), if the court determines that venue is improper, the court must either dismiss the action or, if it is in the interests of justice, transfer the case to a district or division in which it could have been brought. Whether to dismiss for improper venue, or alternatively to transfer venue to a proper court, is a matter within the sound discretion of the district court. *See King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992).

### III. DISCUSSION

The Court will first address Blue Source's arguments regarding personal jurisdiction and

9

Case No.14-CV-02147-LHK
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

1  venue. The Court will then turn to the sufficiency of Adobe's allegations in each of the seven

2  causes of action, and then address Adobe's allegation regarding joint and several liability.

3  **A. Personal Jurisdiction and Venue**

4  With respect to venue, for claims of copyright infringement venue is proper "in the district

5  in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). "The Ninth

6  Circuit interprets this statutory provision to allow venue 'in any judicial district in which the

7  defendant would be amenable to personal jurisdiction if the district were a separate state.'"

8  *Brayton Purcell*, 606 F.3d at 1128 (quoting *Columbia Pictures Television v. Krypton Broad. of*

9  *Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir. 1997)).

10  On the other hand, "[v]enue over trademark claims is governed by the general venue

11  statute, 28 U.S.C. § 1391." *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d

12  1109, 1128 (C.D. Cal. 2009). Similarly, venue over a claim under the UCL is governed by the

13  general venue statute. *Allen v. Similasan Corp.*, No. 12CV0376-BTM-WMC, 2013 WL 2120825,

14  at *8 (S.D. Cal. May 14, 2013). The general venue statute provides in relevant part that venue is

15  proper in, *inter alia*, "any judicial district in which any defendant is subject to the court's personal

16  jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(3). In short, "[t]he court uses

17  basically the same procedure to decide a motion to dismiss for improper venue as it does for

18  deciding a motion to dismiss for lack of personal jurisdiction." *Goldberg v. Cameron*, 482 F.

19  Supp. 2d 1136, 1143 (N.D. Cal. 2007). Accordingly, because venue for Adobe's claims would be

20  proper in any district in which Blue Source is subject to personal jurisdiction, the Court examines

21  the personal jurisdiction and venue inquiries in tandem to determine if Blue Source is subject to

22  personal jurisdiction in the Northern District of California. The Court also notes that Blue

23  Source's only argument in the instant Motion as to why venue in the Northern District of

24  California is improper is that Blue Source is not subject to personal jurisdiction in this District. *See*

25  Mot. at 22-24.

26  As previously discussed, for specific personal jurisdiction the Ninth Circuit has adopted a

27  three-part test that requires the plaintiff to show that: (1) the defendant purposefully directed its

28

10

activities at residents of the forum or purposefully availed itself of the privilege of doing business in the forum; (2) the plaintiff's claim arises out of or relates to those activities; and (3) the assertion of personal jurisdiction is reasonable and fair. *Schwarzenegger*, 374 F.3d at 802. It is the plaintiff's burden to plead allegations satisfying the first two prongs. *Id.* If the plaintiff does so, the burden shifts to the defendant to show why the exercise of personal jurisdiction would not be reasonable and fair. *Id.* The Court now considers each element of the three-part personal jurisdiction test.

### 1. Purposeful Availment or Purposeful Direction

The first prong of the Ninth Circuit's three-part test for personal jurisdiction requires that the defendant either purposefully directed its activities at residents of the forum or purposefully availed itself of the privilege of doing business in the forum. For both trademark infringement actions and copyright infringement actions, the Ninth Circuit requires a showing of purposeful direction. *Nissan Motor Co. v. Nissan Computer Corp.*, 246 F.3d 675, 675 (9th Cir. 2000) (applying purposeful direction analysis to trademark infringement lawsuit) (unpublished decision); *Brayton Purcell*, 606 F.3d at 1128 (applying purposeful direction analysis to copyright infringement action). Likewise, courts in the Ninth Circuit require a showing of purposeful direction for claims brought pursuant to the UCL. *See, e.g.*, *Miller v. S&S Hay Co.*, No. 1:12-CV-01796-LJO, 2013 WL 3212494, at *2 (E.D. Cal. June 24, 2013) (examining whether defendant "purposefully directs his activities at the forum" to determine proper venue for UCL claim). To establish purposeful direction, a plaintiff must satisfy a three-part test drawn from the U.S. Supreme Court's opinion in *Calder v. Jones*: (1) the defendant must have committed an intentional act; (2) the defendant's act was expressly aimed at the forum state; and (3) the defendant knew the brunt of the harm was likely to be suffered in the forum state. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (citing *Calder v. Jones*, 465 U.S. 783, 788-89 (1984)).

### a. Intentional Act

In the context of the *Calder* test, an intentional act is "an external manifestation of the actor's intent to perform an actual, physical act in the real world." *Wash. Shoe Co. v. A-Z Sporting*

United States District Court
Northern District of California

Case No.14-CV-02147-LHK
ORDER DENYING MOTION TO DISMISS

1    *Goods, Inc.*, 704 F.3d 668, 674 (9th Cir. 2012); *Schwarzenegger*, 374 F.3d at 806 (an intentional

2    act "refers to an intent to perform an actual, physical act in the real world."). In the Ninth Circuit,

3    an "intentional act" includes selling an allegedly infringing product, even if such sales occur

4    outside the forum. *A-Z Sporting*, 704 F.3d at 674 (selling infringing footwear in, *inter alia*,

5    Arkansas constituted intentional act).

6        Here, Adobe alleges that Blue Source, along with the other named Defendants, "offer[ed]

7    for sale, sell[], and/or distribut[e]" infringing copies of Adobe-Branded Software. SAC ¶¶ 45-48.

8    Adobe further contends that Defendants, including Blue Source, made these offers for sale, sales,

9    and distributions "to resellers and end users in the United States and within this judicial district."

10   *See, e.g.*, *id.* ¶ 46. Accordingly, Adobe alleges that Blue Source engaged in the sale and

11   distribution of products that infringed Adobe's trademarks and copyrights, which is a sufficient

12   allegation of an intentional act. *See A-Z Sporting*, 704 F.3d at 674.

13        **b.  Express Aiming**

14       The second prong of the purposeful direction inquiry is whether the defendant expressly

15   aimed its act at the forum state. *Dole Food Co.*, 303 F.3d at 1111. The "express aiming" analysis

16   "depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue."

17   *Schwarzenegger*, 374 F.3d at 807. To be satisfied, the "express aiming" inquiry requires

18   "something more" than "a foreign act with foreseeable effects in the forum state." *A-Z Sporting*,

19   704 F.3d at 675 (citing *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th

20   Cir. 2000)). For instance, the delivery or consumption of products in the forum state that are

21   "'random,'" "'fortuitous,'" or "'attenuated'" does not satisfy the express aiming analysis. *Mavrix*

22   *Photo*, 647 F.3d at 1230 (quoting *Burger King*, 471 U.S. 462, 486 (1985)). On the other hand,

23   "where a defendant *knows*—as opposed to being able to foresee—that an intentional act will

24   impact another state," then "the 'expressly aimed' requirement is satisfied." *A-Z Sporting*, 704

25   F.3d at 677 (emphasis in original).

26       Accordingly, "the Ninth Circuit has held that specific jurisdiction exists where a plaintiff

27   files suit in its home state against an out-of-state defendant and alleges that defendant intentionally

28

Case No.14-CV-02147-LHK
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

1  infringed its intellectual property rights knowing [the plaintiff] was located in the forum state."

2  *Amini Innovation Corp. v. JS Imps., Inc.*, 497 F. Supp. 2d 1093, 1105 (C.D. Cal. 2007) (citing and

3  collecting cases); *see also A-Z Sporting*, 704 F.3d at 675-76 (plaintiff who alleged that defendant

4  "willfully infringed copyrights owned by [plaintiff], which, as [defendant] knew, had its principal

5  place of business in the Central District [of California]," established that defendant's intentional

6  act was "expressly aimed at the Central District of California because [defendant] *knew* the impact

7  of his willful violation would be felt there.") (emphasis in original); *Adobe Sys. Inc. v. Childers*,

8  No. 5:10-CV-03571 JF/HRL, 2011 WL 566812, at *3 (N.D. Cal. Feb. 14, 2011) ("In intellectual

9  property cases, the Ninth Circuit has found specific jurisdiction where a plaintiff bringing suit in

10 its home forum against an out-of-state defendant alleges that the defendant engaged in infringing

11 activities knowing that plaintiff was located in the forum.").

12        Here, in the Second Amended Complaint Adobe alleges that all Defendants, including

13 Blue Source, intentionally infringed Adobe's copyrights and trademarks by offering for sale,

14 selling, and distributing "counterfeit and/or unauthorized Adobe-Branded Software that infringes

15 on Plaintiff's Trademarks and Copyrights." SAC ¶¶ 45-48, 55; *see also id.* ¶ 17 (alleging

16 "Defendants have advertised, offered to sell and sold unauthorized and counterfeit software

17 products that infringe the trademarks and copyrights of Plaintiff within the State of California").

18 Adobe further alleges that Defendants, including Blue Source, "had knowledge of Plaintiff's

19 ownership of the Trademarks . . . prior to the actions alleged herein," and that Defendants,

20 including Blue Source, "had knowledge of Plaintiff's ownership of its Copyrights" but

21 nevertheless "copied, imported, offered for sale, sold, and/or distributed unauthorized copies of the

22 Copyrights in order to illegally profit from Plaintiff's Copyrights." *Id.* ¶ 56.

23        As to whether Adobe alleges that Blue Source knew Adobe "was located in the forum

24 state," *Amini*, 497 F. Supp. 2d at 1105, Adobe does allege it is a "global leader," "famous," and

25 "popular[]" maker of computer software with its principal place of business in San Jose,

26 California. SAC ¶¶ 1, 23-26. Furthermore, as previously discussed, in ruling on a motion to

27 dismiss for lack of personal jurisdiction, a court may consider "evidence presented in affidavits to

28

13

assist it in its determination."[2] *Unocal*, 248 F.3d at 922. Here, in conjunction with its Opposition Adobe filed a declaration from Michael Draper, the Global Manager Piracy Investigations for Adobe. Declaration of Michael Draper in Support of Opposition, ECF No. 65-3 ("Draper Decl."), ¶ 1. The Draper Declaration states that "[a]ll physical products [of Adobe] indicate Adobe's address on the discs and packaging: 'Adobe Systems Incorporated[,] 345 Park Avenue, San Jose, California 95110-27404." *Id.* ¶ 8. The declaration also attaches an invoice showing that Blue Source sold and shipped a "Full Retail Box" version of "Adobe Acrobat 11" to the SoftwareMedia Defendants. Draper Decl., Ex. D. In short, Adobe has produced evidence by affidavit that all of Adobe's physical products display the address of Adobe's principal place of business in the Northern District of California, and that Blue Source sold and shipped at least one of Adobe's physical products. Therefore, accepting Adobe's allegations as true—as the Court must in ruling on both a motion to dismiss for lack of personal jurisdiction and for improper venue, *see Brayton Purcell*, 606 F.3d at 1127—the Court finds that Adobe makes a *prima facie* showing that Blue Source knew Adobe was located in the forum state, and more specifically that Adobe was located in the Northern District of California. *See Warner Bros. Home Entm't Inc. v. Jimenez*, No. CV 12-9160 FMO JEMX, 2013 WL 3397672, at *2 (C.D. Cal. July 8, 2013) (finding in action for copyright infringement that plaintiff made *prima facie* showing that defendant knew plaintiff was a resident of the forum state where plaintiff filed supplemental papers "present[ing] evidence that the TV Programs' packaging—which defendant must copy in order to create and sell the infringing products—contains . . . plaintiff's address in Burbank, California.").

Accordingly, Adobe makes a *prima facie* showing that Blue Source willfully infringed Adobe's copyrights and trademarks, knowing that Adobe was a resident of this District. Under Ninth Circuit precedent, this is sufficient to satisfy the "expressly aimed" inquiry. *See A-Z Sporting*, 704 F.3d at 675-76; *Amini*, 497 F. Supp. 2d at 1105.

In its Motion, Blue Source argues that Adobe fails to allege that Blue Source "expressly

---

[2] The Ninth Circuit has held that a court may similarly consider evidence presented in affidavits in ruling on a motion to dismiss for improper venue. *Brayton Purcell*, 606 F.3d at 1127.

Case No.14-CV-02147-LHK
ORDER DENYING MOTION TO DISMISS

*(margin)* United States District Court / Northern District of California

1
2
3
4
5
6
7
8
9
10
11

United States District Court
Northern District of California

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

aimed" an act at the forum state because Adobe insufficiently alleges that Blue Source transacted any business in California. Mot. at 21. Specifically, Blue Source argues that the "only allegation concerning any transactions expressly aimed at California are those transactions in which Adobe's investigators purchased product from [the SoftwareMedia Defendants]." Mot. at 21. Blue Source contends that Adobe cannot "manufacture personal jurisdiction . . . by purchasing the accused product in the forum state." *Id.* Without addressing the merits of Blue Source's argument, the Court finds that Adobe's claim of personal jurisdiction does not hinge on Blue Source's sale of products into the forum state. This is because Adobe establishes a *prima facie* case that Blue Source "willfully infringed" Adobe's intellectual property rights and that Blue Source "knew" Adobe "had its principal place of business" in this District. *A-Z Sporting*, 704 F.3d at 675-76. At this stage of the proceedings, this is sufficient to show express aiming. *See id.*

> **c. Foreseeable Harm**

The third and final prong of the purposeful direction inquiry is whether the defendant knew the brunt of the harm is likely to be suffered in the forum. *Dole Food Co.*, 303 F.3d at 1111. Where, as here, a party brings a claim for infringement of intellectual property, the Ninth Circuit has held that "[i]t is foreseeable that the loss will be inflicted both in the forum where the infringement took place . . . and where the copyright holder has its principal place of business." *A-Z Sporting*, 704 F.3d at 679; *see also Mavrix Photo*, 647 F.3d at 1231 ("The economic loss caused by the intentional infringement of a plaintiff's copyright is foreseeable.").

Here, Adobe alleges that Blue Source intentionally infringed Adobe's copyrights and trademarks. *See* SAC ¶ 55 (alleging that "Defendants have imported, advertised, marketed, offered to [sell], sold and distributed numerous counterfeit and/or unauthorized Adobe-Branded Software that infringe on Plaintiff's Trademarks and Copyrights"). In addition, Adobe alleges that Adobe has suffered damages, including "thousands if not millions of dollars" in lost revenue, the "diminish[ment] of Plaintiff's goodwill," and the dilution of Adobe's trademarks. *Id.* ¶¶ 55, 58, 59. It is foreseeable that Adobe would suffer such harm "where [Adobe] has its principal place of business," specifically the Northern District of California. *A-Z Sporting*, 704 F.3d at 679.

15

1    Therefore, Adobe sufficiently alleges that Blue Source knew the brunt of the harm from Blue

2    Source's infringement was likely to be suffered in this District. Moreover, the Court finds that

3    Adobe has satisfied all three parts of the purposeful direction test.

4    **2.  Claim Arising Out of Forum-Related Activities**

5    The second prong of the specific jurisdiction test requires that the plaintiff's claims arise

6    out of defendant's forum-related activities. *Schwarzenegger*, 374 F.3d at 802. To determine

7    whether the plaintiff's claims arise out of the defendant's forum-related activities, courts use a

8    traditional "but for" causation analysis. *Bancroft*, 223 F.3d at 1088. The Ninth Circuit has

9    recognized that, in trademark or copyright infringement actions, if the defendant's infringing

10   conduct harms the plaintiff in the forum, this element is satisfied. *Panavision Int'l, L.P. v.*

11   *Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998); *see also CollegeSource, Inc. v. AcademyOne, Inc.*,

12   653 F.3d 1066, 1079 (9th Cir. 2011) (trademark infringement claim "arises out of the actions of

13   [defendant]" where defendant allegedly infringed plaintiff's trademark, knowing that plaintiff was

14   located in California).

15   Here, Adobe alleges it uses the intellectual property rights at issue "in the United States

16   and throughout the world," including in this District. SAC ¶ 26. In addition, as previously

17   discussed Adobe has made a sufficient showing that Blue Source's alleged infringement harmed

18   Adobe in this District by, *inter alia*, depriving Adobe of revenue, diminishing Adobe's goodwill,

19   and diluting Adobe's trademarks. *See* Section III.A.1, *supra*. Accordingly, Adobe alleges that

20   Adobe suffered harm in this District, and that the but-for cause of this harm is Blue Source's

21   alleged infringement. This is sufficient to show that Adobe's claims arise out of Blue Source's

22   forum-related activities. *See CollegeSource*, 653 F.3d at 1079 (trademark infringement claim

23   "arises out of the actions of [defendant]" where defendant allegedly infringed plaintiff's

24   trademark, knowing that plaintiff was located in California).

25   **3.  Reasonableness**

26   Once a plaintiff has met its burden on the first two prongs of the specific personal

27   jurisdiction inquiry, the burden shifts to the defendant to show why the exercise of jurisdiction

28

16

Case No.14-CV-02147-LHK
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

1    would not be reasonable and fair. *Schwarzenegger*, 374 F.3d at 802. Generally, a defendant must

2    "'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.*

3    (quoting *Burger King*, 471 U.S. at 476-78).

4           Here, Blue Source does not argue that the exercise of specific personal jurisdiction would

5    be unreasonable and unfair. In fact, the only statement Blue Source makes with respect to this

6    factor is that "[t]he Court needn't consider whether or not jurisdiction in the Northern District of

7    California offends traditional notions of fair play and substantial justice." Mot. at 22. Accordingly,

8    the Court finds that Blue Source fails to carry its burden to show why the Court's exercise of

9    personal jurisdiction over Blue Source would not be reasonable and fair. *See Schwarzenegger*, 374

10   F.3d at 802. Furthermore, for the reasons stated above, the Court finds that Adobe sufficiently

11   alleges that personal jurisdiction over Blue Source, both in this forum state and in this District,

12   would be proper. Accordingly, the Court DENIES Blue Source's motion to dismiss for lack of

13   personal jurisdiction and for improper venue.

14   **B. Sufficiency of Adobe's Allegations**

15          The Court now turns to Blue Source's motion in the alternative to dismiss each of Adobe's

16   causes of action pursuant to Rule 12(b)(6). Blue Source attacks the Second Amended Complaint in

17   two ways. First, Blue Source argues that Adobe fails to state a claim for any of Adobe's causes of

18   action because Adobe impermissibly lumps Blue Source in with all other Defendants, and thereby

19   fails to allege "what specifically *Blue Source* did wrong." Mot. at 6 (emphasis in original).

20   Second, Blue Source contends that each of Adobe's individual causes of action fail because Adobe

21   fails to allege the requisite elements of each claim, fails to allege certain claims with factual

22   specificity, or because Adobe's allegations are contradicted by an affidavit and exhibits Blue

23   Source filed in conjunction with the instant Motion. *See* Mot. at 8-15. The Court will address each

24   argument in turn.

25          **1. Impermissible Lumping**

26          Blue Source argues that the Second Amended Complaint contains "buckshot accusations"

27   and that "in over 95% of *all* allegations Blue Source is either not mentioned at all or is 'lumped'

28
17

United States District Court
Northern District of California

[in] that ground identified as 'Defendants' – a group which includes all past, current and future Defendants." Mot. at 6 (emphasis in original). Blue Source also argues that Adobe's allegations as to Blue Source fail to "attribute[] specific wrongdoing to Blue Source" and thereby "fails to meet the pleading standards of [Rule] 8." *Id.* at 5-6.

As a general rule, when a pleading fails "to allege what role each Defendant played in the alleged harm," this "makes it exceedingly difficult, if not impossible, for individual Defendants to respond to Plaintiffs' allegations." *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011); *see also Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 961 (S.D. Cal. 1996) (stating "confusion of which claims apply to which defendants would require that the complaint be dismissed with leave to file an amended complaint."). Accordingly, a complaint which "lump[s] together . . . multiple defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2)." *Gen-Probe*, 926 F. Supp. at 961 (citing *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988)). However, this does not mean that a plaintiff's assertion of claims against "Defendants" will automatically be deficient. Rather, a plaintiff "must identify what action each Defendant took that caused Plaintiffs' harm, without resort to generalized allegations against Defendants as a whole." *In re iPhone*, 2011 WL 4403963, at *3. Put another way, a plaintiff's allegations must "provide sufficient notice to all of the Defendants as to the nature of the claims being asserted against them," including "what conduct is at issue." *Villalpando v. Exel Direct Inc.*, No. 12-CV-04137 JCS, 2014 WL 1338297, at *5 (N.D. Cal. Mar. 28, 2014).

Construing the pleadings in the light most favorable to Adobe—as the Court must in ruling on a motion to dismiss, *see Manzarek*, 519 F.3d at 1031—the Court finds that the Second Amended Complaint does not impermissibly lump together multiple defendants such that it runs afoul of Rule 8. Adobe alleges the wrongful conduct in which Blue Source engaged, specifically that the SoftwareMedia Defendants' infringing "products are, in part, supplied by Defendants United Prospects, Inc.; JHS Enterprises, Inc.; and Blue Source Group, Inc." SAC ¶ 43; *see also id.* ¶ 53 (alleging that the SoftwareMedia Defendants "have identified Defendants United Prospects,

18

United States District Court
Northern District of California

1   Inc.; JHS Enterprises, Inc.; and Blue Source Group, Inc. as the sources of the infringing Adobe

2   software"). Adobe also alleges that "Defendants United Prospects, Inc.; JHS Enterprises, Inc.; and

3   Blue Source Group, Inc. are not authorized by Adobe to market, advertise, or sale [sic] its

4   trademarked and copyrighted software products." *Id.* ¶ 53. Furthermore, although Adobe does in

5   certain paragraphs of the Second Amended Complaint make infringement claims against

6   "Defendants" generally, *see, e.g.*, *id.* ¶¶ 44-48, Adobe defines the term "Defendants" to be

7   "inclusive" of "Software[M] edia.com, Inc.; Adam Childers; United Prospects, Inc.; JHS

8   Enterprises, Inc.; [and] Blue Source Group, Inc.," *id.* at 2. Put another way, the gravamen of

9   Adobe's allegations in the instant lawsuit are that all the Defendants infringed on Adobe's

10  trademarks and copyrights, and that Blue Source specifically sold infringing products to the

11  SoftwareMedia Defendants without authorization from Adobe. *See id.* ¶ 53. The Court finds that

12  such allegations "provide sufficient notice to [Blue Source] as to the nature of the claims

13  asserted," including "what conduct is at issue." *Villalpando*, 2014 WL 1338297, at *5; *see also In

14  re iPhone*, 2011 WL 4403963, at *8 (pleading does not violate Rule 8 if plaintiff "identif[ies] what

15  action each Defendant took that caused [plaintiff] harm").

16        Furthermore, the Court notes that Adobe states that five of its causes of action are brought

17  against, among other Defendants, "Blue Source Group, Inc." specifically. *See* SAC at 15 (cause of

18  action for trademark infringement alleged against, *inter alia*, "Blue Source Group, Inc."); *id.* at 16

19  (same for cause of action for false designation of origin, false or misleading advertising, and unfair

20  competition); *id.* at 18 (same for cause of action for trademark dilution); *id.* at 19 (same for cause

21  of action for copyright infringement); *id.* at 20 (same for UCL cause of action). Accordingly,

22  Adobe sufficiently puts Blue Source on notice as to which causes of action apply to Blue Source.

23  *See Vasquez v. Bank of Am., N.A.*, No. 13-CV-02902-JST, 2013 WL 6001924, at *5 (N.D. Cal.

24  Nov. 12, 2013) (holding plaintiff satisfied the pleading requirements of Rule 8 where "Plaintiff

25  specifically states in the FAC that she brings her third, sixth and seventh causes of action only

26  against BANA, and brings the remaining causes of action against both Defendants.").

27        In its Motion, Blue Source cites several cases in support of its argument that the Second

28

Amendment Complaint impermissibly "lumps several defendants together." Mot. at 5-6. However, in each of these cases, the complaint failed to attribute specific conduct to a specific defendant and thereby violated Rule 8. *See Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (stating that "[t]he complaint failed to differentiate among the defendants, alleging instead violations by 'the defendants'"); *VanZandt v. Okla. Dep't of Human Servs.*, 276 F. App'x 843, 849 (10th Cir. 2008) (finding complaint failed to "differentiate between the actions of each individual defendant and the actions of the group as a whole"); *Appalachian Enters., Inc. v. ePayment Solutions, Ltd.*, No. 01 CV 11502 (GBD), 2004 WL 2813121, at *7 (S.D.N.Y. Dec. 8, 2004) ("The complaint in this case does not identify any particular defendant that committed any specific act of wrongdoing against plaintiff. Rather, the complaint simply attributes the wrongful acts as being committed collectively by the seventeen defendants."); *Southerland v. New York City Hous. Auth.*, No. 10-CV-5243 (SLT), 2010 WL 4916935, at *3 (E.D.N.Y. Nov. 23, 2010) ("Plaintiff's statement of facts lists allegations against 'defendants' generally [but] fails to distinguish defendants' conduct or allege facts against any individual defendant."). In contrast, here Adobe alleges that Blue Source, as well as Defendants UPI and JHS, supplied the SoftwareMedia Defendants with infringing products, and that Blue Source was not authorized to sell or distribute such products. SAC ¶¶ 43, 53. Accordingly, the cases Blue Source cites are inapposite.

For the reasons stated above, the Court DENIES Blue Source's Motion to the extent Blue Source seeks dismissal of Adobe's claims based on impermissible lumping of allegations against Blue Source.

## 2. Sufficiency of Cause of Action for Trademark Infringement

Blue Source next attacks Adobe's cause of action for trademark infringement under 15 U.S.C. § 1114 in three ways. First, Blue Source argues that Adobe's allegations fail to "give[] Blue Source notice as to what it did wrong" because Adobe does not allege its claim with the requisite factual specificity. Mot. at 8. Second, Blue Source asserts that Adobe "fail[s] to plead adequately that Blue Source has done anything to create a likelihood of confusion," as required to plead a cause of action for trademark infringement. *Id*. at 9. Third, Blue Source contends that

20

United States District Court
Northern District of California

1   "'[a]s a general rule, trademark law does not reach the sale of genuine goods bearing a true mark

2   even though the sale is not authorized by the mark owner.'" *Id.* (quoting *NEC Elecs. v. Cal.*

3   *Circuit Adbco*, 810 F.2d 1506, 1509 (9th Cir. 1987)). Blue Source, citing an affidavit filed in

4   conjunction with the instant Motion, then claims that Blue Source sold only "legitimate, unaltered

5   Adobe key cards to [the SoftwareMedia Defendants]." *Id.* Because Blue Source claims it sold

6   "genuine" Adobe products, Blue Source argues it cannot be liable for trademark infringement. *Id.*

7        To state a cause of action for trademark infringement, a plaintiff must allege that (1) it has

8   a trademark right; (2) that was used by defendant; (3) in a way that is likely to cause consumer

9   confusion and thus infringe upon the trademark right. *Levi Strauss & Co. v. Blue Bell, Inc.*, 778

10   F.2d 1352, 1354 (9th Cir. 1985). "The core element of trademark infringement is the likelihood of

11   confusion, i.e., whether the similarity of the marks is likely to confuse customers about the source

12   of the products." *Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir.

13   2007).

14        Here, Adobe alleges that all Defendants, including Blue Source, "used in commerce the

15   reproductions, counterfeits, copies, and/or colorable imitations of [Adobe's] registered marks"

16   when Defendants sold, offered for sale, and distributed "counterfeit and/or unauthorized copies of

17   Adobe-Branded Software bearing [Adobe's] Trademarks." SAC ¶ 65. Adobe further alleges that

18   all Defendants, including Blue Source, "reproduced, counterfeited, copied and colorably imitated

19   Plaintiff's Trademarks" and used these imitation marks on "labels, signs, prints, packages,

20   wrappers, receptacles and/or advertisements" in connection with the sale of counterfeit or

21   unauthorized software. *Id.* ¶ 66. Adobe then alleges that Defendants' use of Adobe's marks is

22   "likely to cause confusion or mistake" and to "defraud consumers" who "believe that the items

23   offered for sale by Defendants are authorized products manufactured and distributed by Plaintiff."

24   *Id.* ¶ 67. Viewing the pleadings in the light most favorable to Adobe, *see Manzarek*, 519 F.3d at

25   1031, the Court finds that these allegations sufficiently allege that Blue Source's use of Adobe's

26   marks "is likely to confuse customers about the source of" the counterfeit or unauthorized Adobe

27   products. *Abercrombie & Fitch*, 486 F.3d at 633; *see also Church & Dwight Co. v. Mayer Labs.*,

28   
Case No.14-CV-02147-LHK
ORDER DENYING MOTION TO DISMISS

1    *Inc.*, No. C-10-4429 EMC, 2011 WL 1225912, at *20 (N.D. Cal. Apr. 1, 2011) (denying motion to

2    dismiss counterclaim of trademark infringement where mark holder alleged, *inter alia*, that

3    opposing party's use of mark "falsely suggests an affiliation with [the mark holder] that deceived

4    or is likely to deceive or confuse customers as to the origins of C&D's Trojan Ultrathin and

5    ThinTensity products," and thereby alleged consumer confusion). Furthermore, the Court finds

6    that Adobe's allegations contain the requisite factual specificity to allow the court to draw the

7    reasonable inference that Blue Source is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678.

8    Accordingly, the Court DENIES Blue Source's Motion to the extent that Blue Source argues that

9    Adobe fails to allege consumer confusion, or that Adobe fails to allege its cause of action with the

10   requisite specificity.

11          The Court now turns to Blue Source's argument in the alternative, which is that Blue

12   Source could not have committed trademark infringement because Blue Source only sold

13   "genuine" Adobe products. Mot. at 9. Blue Source supports this argument by citing to the

14   declaration of Jared Abramson, the president and CEO of Blue Source. *Id.*; Abramson Decl. ¶ 1.

15   The Abramson Declaration states that Blue Source purchased "software key cards or activation

16   cards" from a retailer which was liquidating its inventory. Abramson Decl. ¶¶ 10-11. The

17   Abramson Declaration further states that each card "contains simply a key card number or

18   activation number that permits the end-user" to download Adobe software via the Internet. *Id.*

19   ¶ 13. The Abramson Declaration then states that Blue Source re-sold these software key cards or

20   activation cards to the SoftwareMedia Defendants. *Id.* ¶ 14. Based on the Abramson Declaration,

21   Blue Source in its Motion argues that it only "sold legitimate, unaltered" Adobe products, and

22   accordingly cannot be liable for trademark infringement. Mot. at 9.

23          There are two problems with Blue Source's argument. First, in ruling on a motion to

24   dismiss pursuant to Rule 12(b)(6), a court may not "look beyond the plaintiff's complaint" to

25   matters outside the pleadings, unless the Court refers to judicially noticeable facts or matters of

26   public record. *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995); *Shwarz v. United States*, 234

27   F.3d 428, 435 (9th Cir. 2000). Here, Blue Source does not request judicial notice of the Abramson

28

United States District Court
Northern District of California

22

United States District Court
Northern District of California

1  Declaration or any exhibits attached thereto, nor does Blue Source argue that the Abramson

2  Declaration or the exhibits attached thereto are matters of public record. *See* Mot. at 9.

3  Accordingly, even if Blue Source's argument that it cannot be liable for trademark infringement

4  based on the sale of genuine Adobe products is correct (which the Court does not so hold), it

5  would be improper for this Court to consider the Abramson Declaration in ruling on Blue Source's

6  motion to dismiss pursuant to Rule 12(b)(6).

7       Second, Blue Source in its Motion states that "[t]o the extent this motion relies upon

8  matters outside of the SAC, Blue Source requests summary judgment" pursuant to Rule 12(d).

9  Mot. at 1 n.1 Rule 12(d) provides that if "matters outside the pleadings are presented to and not

10  excluded by the court" in connection with a motion to dismiss pursuant to Rule 12(b)(6), a court

11  may treat the motion "as one for summary judgment under Rule 56" and "[a]ll parties must be

12  given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R.

13  Civ. P. 12(d). Whether to convent a Rule 12(b)(6) motion into one for summary judgment

14  pursuant to Rule 12(d) is at the discretion of the district court. *Burgess v. City and County of San*

15  *Francisco*, 955 F.2d 47, 47 (9th Cir. 1992) (unpublished decision).

16       Here, conversion of the motion to dismiss to one for summary judgment is not appropriate.

17  Blue Source moved for summary judgment only three months after Adobe added Blue Source as a

18  defendant in the instant litigation. As Adobe argues in its Opposition, *see* Opp'n at 7, Blue

19  Source's assertion that it only sold "genuine" goods raises a factual dispute as to the truth of

20  Adobe's allegations that is more appropriate for resolution after Adobe has had an opportunity to

21  conduct discovery on its claims. Accordingly, the Court finds that considering a motion for

22  summary judgment at this stage of the litigation would be premature. *See, e.g.*, *Burlington N.*

23  *Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th

24  Cir. 2003) (where summary judgment motion is filed early in the litigation "before a party has had

25  any realistic opportunity to pursue discovery relating to its theory of the case," a district court

26  should "freely" defer or deny such a motion).

27       For the reasons stated above, the Court will not consider material beyond the pleadings in

28
Case No.14-CV-02147-LHK
ORDER DENYING MOTION TO DISMISS

ruling on Blue Source's Rule 12(b)(6) motion. Furthermore, the Court notes that Blue Source argues the Abramson Declaration provides grounds for dismissal of other causes of action pursuant to Rule 12(b)(6). *See* Mot. at 10 (relying on Abramson Declaration to argue for dismissal of cause of action brought pursuant to 15 U.S.C. § 1125(a)); *id.* at 11 (arguing Adobe's cause of action for trademark dilution should be dismissed because, based on the Abramson Declaration, Blue Source only distributed genuine Adobe products); *id.* at 13 (arguing Blue Source is not liable for copyright infringement of Adobe's software because, based on the Abramson Declaration, Blue Source only distributed software key cards). The Court will disregard these arguments as improperly relying on material outside Adobe's pleadings.

For the reasons stated above, the Court DENIES Blue Source's motion to dismiss the cause of action for trademark infringement.

### 3. Sufficiency of Cause of Action for False Designation of Origin, False or Misleading Advertising, and Unfair Competition

Blue Source next moves to dismiss Adobe's cause of action for false designation of origin, false or misleading advertising, and unfair competition brought pursuant to 15 U.S.C. § 1125(a). Mot. at 9-10. Specifically, Blue Source argues that Adobe fails to allege that Blue Source engaged in the purchase or sale of any infringing products. *Id.* at 10.

Where, as here, a plaintiff brings a cause of action under § 1125(a), the plaintiff must allege that a defendant "(1) use[d] in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of his or another person's goods or services." *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007). Here, the Court finds Adobe alleges each element of this cause of action, including that all the Defendants engaged in the purchase or sale of infringing products. Specifically, Adobe alleges that all Defendants, including Blue Source, "used in commerce marks that are confusingly similar to Plaintiff's Trademarks and/or have made false designations of origin" by, *inter alia*, selling, offering for sale, and distributing "counterfeit and/or unauthorized copies of Adobe-Branded Software," and using imitation Adobe marks on "labels,

Case No.14-CV-02147-LHK
ORDER DENYING MOTION TO DISMISS

signs, prints, packages, wrappers, receptacles and/or advertisements." SAC ¶¶ 66, 73. Adobe

further alleges that Defendants' use of Adobe's marks is "likely to cause confusion, mistake, or to

deceive, mislead, betray, and defraud consumers" into believing that "Defendants' unauthorized

products are genuine, authorized Adobe-Branded Software." *Id.* ¶ 77. Accepting Adobe's

allegations as true and construing the pleadings in the light most favorable to Adobe, *Manzarek*,

519 F.3d at 1031, the Court finds that Adobe pleads the requisite elements for a cause of action

under § 1125(a). *See Freecycle Network*, 505 F.3d at 902. Therefore, the Court DENIES Blue

Source's motion to dismiss Adobe's cause of action brought pursuant to § 1125(a).

### 4. Sufficiency of Cause of Action for Trademark Dilution

Blue Source next moves to dismiss Adobe's cause of action for trademark dilution

pursuant to 15 U.S.C. § 1125(c) on two grounds: (1) that Adobe fails to allege more than

conclusory allegations in support of Adobe's claim, and (2) that Adobe fails to allege that Blue

Source diluted Adobe's marks, as is required to state a claim for trademark dilution. *Id.* at 10-11.

To state a claim for trademark dilution, the trademark owner must allege "(1) the mark is

famous; (2) the defendant is making a commercial use of the mark in commerce; (3) the

defendant's use began after the mark became famous; and (4) the defendant's use of the mark

dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish

goods and services." *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 633 F.3d 1158,

1164 n.4 (9th Cir. 2011). Dilution of a mark occurs where, *inter alia*, a plaintiff alleges that

another party's use of the mark "weaken[s] the commercial magnetism of these marks and

diminish[es] their ability to evoke their original associations." *Mattel, Inc. v. MCA Records, Inc.*,

296 F.3d 894, 903 (9th Cir. 2002); *see also id.* ("'Dilution' refers to the 'whittling away of the

value of a trademark' when it's used to identify different products.") (quoting 4 J. Thomas

McCarthy, *McCarthy on Trademarks and Unfair Competition* § 24.67, at 24–120; § 24.70, at 24-

122 (2001)). A plaintiff sufficiently alleges dilution of a trademark where the plaintiff alleges

"their marks are weakened and tarnished" by another's use of the marks. *Russell Rd. Food &*

*Beverage, LLC v. Galam*, No. 2:13-CV-776 JCM NJK, 2014 WL 537567, at *2 (D. Nev. Feb. 7,

25

2014).

  Here, in support of Adobe's cause of action for trademark dilution, Adobe alleges that all Defendants, including Blue Source, engaged in the "intentional sale of counterfeit and/or unauthorized software bearing Plaintiff's Trademarks." SAC ¶ 84. Adobe further alleges that Defendants' actions are "likely to cause confusion, mistake, or to deceive, mislead, betray, and defraud consumers to believe that the substandard and/or limited software are genuine, authorized, full retail versions of Adobe-Branded Software." *Id.* Based on this, Adobe then alleges that Defendants' actions are "likely to impair the distinctiveness, strength and value of Plaintiff's Trademarks and injure the business reputation of Plaintiff and its marks." *Id.* In short, Adobe alleges that all Defendants, including Blue Source, sold counterfeit or unauthorized versions of Adobe software that used Adobe's marks, and that the use of Adobe's marks in conjunction with "substandard and/or limited software" is likely to impair the marks' distinctiveness. *See id.* The Court finds that these allegations contain the requisite factual specificity to allow the Court to draw the reasonable inference that Blue Source is liable for trademark dilution. *See Iqbal*, 556 U.S. at 678. In addition, because Adobe alleges that Defendants' actions are "likely to impair the distinctiveness, strength and value of Plaintiff's Trademarks and injure the business reputation of Plaintiff and its marks," SAC ¶ 84, the Court finds that Adobe adequately alleges the element of dilution. *See Mattel*, 296 F.3d at 903 (dilution of mark occurs where a plaintiff alleges another's use of the mark "weaken[s] the commercial magnetism of these marks and diminish[es] their ability to evoke their original associations."); *Galam*, 2014 WL 537567, at *2 (denying motion to dismiss on the grounds that owner of mark failed to allege dilution where the mark owner alleged "their marks are weakened and tarnished" by another's use of the marks).

  For the reasons stated above, the Court DENIES Blue Source's motion to dismiss Adobe's cause of action for trademark dilution.

  **5.  Sufficiency of Cause of Action for Copyright Infringement**

  Blue Source next moves to dismiss Adobe's cause of action for copyright infringement for two reasons: (1) because the cause of action "is hopelessly devoid of factual averments" in support

26

Case No.14-CV-02147-LHK
ORDER DENYING MOTION TO DISMISS

1   of the claim; and (2) because Adobe fails to plead any of the requisite elements of a cause of

2   action for copyright infringement. Mot. at 11-14.

3          "Copyright is a federal law protection provided to the authors of 'original works of

4   authorship,' including software programs." *Vernor v. Autodesk, Inc.*, 621 F.3d 1102, 1106 (9th

5   Cir. 2010) (citing 17 U.S.C. §§ 101-103). "The Copyright Act confers several exclusive rights on

6   copyright owners, including the exclusive right[] . . . to distribute their works by sale or rental." *Id.*

7   at 1106-07 (citing 17 U.S.C. § 106(3)). Copyright infringement occurs whenever someone

8   "violates any of the exclusive rights of the copyright owner," including the exclusive distribution

9   right. *Id.* "The exclusive distribution right is limited by the first sale doctrine, an affirmative

10  defense to copyright infringement that allows owners of copies of copyrighted works to resell

11  those copies." *Id.* at 1107. However, this affirmative defense is unavailable to "those who are only

12  licensed to use their copies of copyrighted works." *Id.* "[A] software user is a licensee rather than

13  an owner of a copy where the copyright owner (1) specifies that the user is granted a license; (2)

14  significantly restricts the user's ability to transfer the software; and (3) imposes notable use

15  restrictions." *Id.* at 1111. Where, as here, a defendant is alleged to have obtained a copy of

16  licensed software from a third-party, the defendant is "nevertheless subject to the restrictions of

17  those [licensing] agreements." *Adobe Sys. Inc. v. One Stop Micro, Inc.*, 84 F. Supp. 2d 1086, 1092

18  (N.D. Cal. 2000). If a licensee exceeds the scope of the software license, the licensee may be liable

19  for copyright infringement. *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 940 (9th Cir.

20  2010).

21          Here, Adobe alleges that all of Adobe's software is distributed pursuant to a license to use,

22  which Adobe refers to as the SLA. SAC ¶ 30 ("Every piece of Adobe-Branded Software is

23  licensed" pursuant to Adobe's "Software License Agreement ('SLA').")); *see also id.* (alleging that

24  "[e]very distribution agreement entered into by Plaintiff clearly states that all Adobe-Branded

25  Software is subject to license," and that Adobe "maintains title to the Adobe-Branded Software at

26  all times and at no point does it transfer any ownership of title"). Adobe further alleges that

27  "[e]ach and every piece of Adobe-Branded Software is subject to numerous restrictions on use,

28

United States District Court
Northern District of California

27

location of distribution, transfer, and even who is qualified to obtain the product." *Id*. Accordingly, Adobe sufficiently alleges that users of Adobe software are licensees and not owners. *See Vernor*, 621 F.3d at 1111 (software user is a licensee rather than an owner of software where the copyright owner "(1) specifies that the user is granted a license; (2) significantly restricts the user's ability to transfer the software; and (3) imposes notable use restrictions.").

Furthermore, Adobe alleges that all Defendants including Blue Source obtained, *inter alia*, "unauthorized Adobe-Branded Software products" and subsequently sold, offered for sale, and distributed such Adobe-Branded Software products, even though "Defendants are not authorized distributors and/or resellers of . . . Adobe-Branded Software products." SAC ¶¶ 42, 45. Adobe further alleges that Defendants obtained, sold, offered for sale, and distributed OEM, EDU, and ESD copies of Adobe-Branded Software, as well as Adobe-Branded Software "intended for international distribution," all of which Defendants allegedly sold, offered for sale, and distributed within the United States and within the Northern District of California. *Id.* ¶¶ 45-48. Moreover, as to Blue Source specifically, Adobe alleges that Blue Source sold unauthorized copies of Adobe-Branded Software to the SoftwareMedia Defendants. *See, e.g.*, *id.* ¶ 43. Adobe further alleges that because the SLA did not permit any of the Defendants to sell, offer for sale, or distribute Adobe-Branded Software, Defendants' actions violated the terms of the "Software License Agreement that accompanies each software." *Id.* ¶¶ 45-46, 48.

In short, Adobe alleges that Defendants exceeded the scope of Adobe's license agreements by, *inter alia*, distributing copies of Adobe-Branded Software outside the scope of the software licenses. Adobe has therefore pled the requisite elements for a cause of action of copyright infringement. *See MDY Indus.*, 629 F.3d at 940 (to recover for copyright infringement based on breach of a license agreement, a plaintiff must show the defendant's acts "exceed[ed] the scope of the defendant's license" and "the copyright owner's complaint must be grounded in an exclusive right of copyright (e.g., unlawful reproduction or distribution)."). Furthermore, the Court finds that the above allegations state Adobe's claim with sufficient factual specificity. *See Iqbal*, 556 U.S. at 678. Accordingly, the Court hereby DENIES Blue Source's motion to dismiss Adobe's claim of

Case No.14-CV-02147-LHK
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

1    copyright infringement.

2        **6.  Sufficiency of Cause of Action Pursuant to the UCL**

3        Blue Source also moves to dismiss Adobe's cause of action under the UCL on the grounds

4    that "[t]here is no allegation whatsoever that Blue Source took any action whatsoever within the

5    State of California," and "[t]he California UCL has no extraterritorial application." Mot. at 14-15.

6    Blue Source contends that to the extent Adobe alleges Blue Source sold products to the

7    SoftwareMedia Defendants, such sales would have only involved sales made in Salt Lake City,

8    Utah (where the SoftwareMedia Defendants are based). *Id.* at 14. Accordingly, because Blue

9    Source contends the UCL does not reach such conduct, Blue Source argues this claim fails as a

10   matter of law. *Id.* at 15.

11       It is correct that the UCL does not apply where a plaintiff who is not a resident of

12   California brings a cause of action based on conduct which occurred outside of California.

13   *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207-08 (2011). However, "the UCL reaches any

14   unlawful business act or practice committed in California." *Id.* at 1208; *see also Speyer v. Avis*

15   *Rent A Car System, Inc.*, 415 F. Supp. 2d 1090, 1099 (S.D. Cal. 2005) (stating that California

16   courts have held that "the UCL applies to wrongful conduct that occurs out-of-state but results in

17   injury in California"). In addition, courts have held that a UCL claim may be brought by a plaintiff

18   who is a resident of California, regardless of where the alleged misconduct occurred. *Norwest*

19   *Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222 (1999) (stating that "California

20   residents" suing for mortgage company's out-of-state conduct "may assert UCL claims . . .

21   regardless of where the Norwest Mortgage's conduct of purchasing FPI occurred."); *see also Yu v.*

22   *Signet Bank/Virginia*, 69 Cal. App. 4th 1377, 1391-92 (1999) (allowing California resident who

23   was allegedly harmed by out-of-state misconduct to bring a claim under the UCL).

24       Here, according to the Second Amended Complaint, Adobe's principal place of business is

25   in San Jose, California. SAC ¶ 1. Adobe further alleges that Blue Source's alleged infringement of

26   Adobe's trademarks and copyrights have harmed Adobe in Adobe's principal place of business

27   by, *inter alia*, depriving Adobe of "thousands if not millions of dollars" in lost revenue, causing

29

the "diminish[ment] of Plaintiff's goodwill," and diluting Adobe's trademarks. *Id.* ¶¶ 55, 58, 59. Accordingly, Adobe alleges that it is a California resident that has suffered harm in California as a result of Blue Source's actions. Even assuming that Blue Source's sales of infringing products occurred out-of-state, Adobe—as a California resident who allegedly suffered harm in California—may still properly bring a cause of action under the UCL. *See, e.g.*, *Norwest Mortgage*, 72 Cal. App. 4th at 222 (UCL claim may be brought by a plaintiff who is a resident of California and injured in California, even if the alleged misconduct occurred in, *inter alia*, Iowa or Minnesota). Therefore, the Court DENIES Blue Source's motion to dismiss Adobe's cause of action under the UCL.

### 7.  Causes of Action for Breach of APCPRA Contract and Breach of Settlement Contract

Blue Source also moves to dismiss Adobe's causes of action for breach of APCPRA contract and breach of the settlement contract in *Adobe I*, on the grounds that Blue Source was not a party to either contract. Mot. at 15.

In the Second Amended Complaint, Adobe alleges its causes of action for breach of APCPRA contract and breach of settlement contract against only the SoftwareMedia Defendants. *See* SAC at 21 (breach of APCPRA contract alleged "Defendants SoftwareMedia.com, Inc." and "Adam Childers"); *id.* at 22 (breach of settlement contract alleged against "Defendants SoftwareMedia.com, Inc." and "Adam Childers"). Accordingly, because Adobe does not bring these causes of action against Blue Source, the Court DENIES Blue Source's motion to dismiss these causes of action.

### C.  Joint and Several Liability

Finally, Blue Source moves to dismiss Adobe's claim of joint and several liability. In its Motion, Blue Source construes Adobe's claim regarding joint and several liability as an allegation that Blue Source engaged in a civil conspiracy with other Defendants, and argues that Adobe fails to plead the requisite elements of such a conspiracy. Mot. at 16-17. Blue Source similarly argues that Adobe fails to state its claim for joint and several liability with the requisite factual

30

1    specificity. *Id.* at 16. In its Opposition, Adobe states that in claims for copyright and trademark

2    infringement, "'all persons participating in the actionable conduct are jointly and severally

3    liable.'" Opp'n at 11 (quoting *Bar's Leaks Western, Inc. v. Pollock*, 148 F. Supp. 710, 714 (N.D.

4    Cal. 1957)).

5         "Courts in the Ninth Circuit" have "'held that in patent, trademark, literary property, and

6    copyright infringement cases, any member of the distribution chain'" of allegedly infringing

7    products can be "'jointly and severally liable'" for the alleged misconduct. *Unicolors, Inc. v.*

8    *Macy's, Inc.*, No. CV 14-08611-RGK SSX, 2015 WL 1020101, at *4 (C.D. Cal. Mar. 6, 2015)

9    (quoting *Costello Publishing Co. v. Rotelle*, 670 F.2d 1035, 1043 (D.C. Cir. 1981)); *Frank Music*

10   *Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 519 (9th Cir. 1985) ("Infringers [of a

11   copyright] are jointly and severally liable for plaintiffs' actual damages . . . ."); *Sony Computer*

12   *Entm't Am., Inc. v. Divineo, Inc.*, 457 F. Supp. 2d 957, 968 (N.D. Cal. 2006) (imposing joint and

13   several liability on defendants for copyright infringement claim); *Lockheed Martin Corp. v.*

14   *Network Solutions, Inc.*, No. CV 96-7438 DDP ANX, 1997 WL 381967, at *3 (C.D. Cal. Mar. 19,

15   1997) ("Courts have long held that in patent, trademark, literary property, and copyright

16   infringement cases, any member of the distribution chain can be sued as an alleged joint

17   tortfeasor" and held liable based on joint and several liability); *TASER Int'l, Inc. v. Stinger Sys.*,

18   No. 2:09-CV-289-MMD-PAL, 2012 WL 3205833, at *8 (D. Nev. Aug. 3, 2012) ("'Since

19   trademark infringement and unfair competition are torts, the doctrine of joint tortfeasors is

20   applicable.'") (quoting 4 McCarthy on Trademarks and Unfair Competition § 25:23 (4th ed.

21   2007)); *see also Stabiliserungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.*, 647

22   F.2d 200, 207 (D.C. Cir. 1981) (stating "in patent, trademark, literary property, and copyright

23   infringement cases, any member of the distribution chain can be sued as an alleged joint

24   tortfeasor" who is "jointly and severally liable" to the victim).

25        Here, Adobe alleges that Blue Source, along with Defendants UPI and JHI, were the

26   "sources of the infringing Adobe software" sold to the SoftwareMedia Defendants. SAC ¶ 53; *see*

27   *also id.* ¶ 43 (alleging that the infringing Adobe products sold by the SoftwareMedia Defendants

28

Case No.14-CV-02147-LHK
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

1   "are, in part, supplied by Defendants United Prospects, Inc.; JHS Enterprises, Inc.; and Blue

2   Source Group, Inc."). Adobe further alleges that the infringing products supplied by, among

3   others, Blue Source, included unauthorized or counterfeit OEM, EDU, and ESD versions of

4   Adobe-Branded Software, as well as versions of such software intended for international

5   distribution but which Blue Source and other Defendants distributed within the United States.

6   SAC ¶¶ 45-48. In short, Adobe, alleges that Blue Source was a "joint tortfeasor[]" in the

7   infringement of Adobe's trademarks and copyrights, and accordingly Blue Source is "jointly and

8   severally liable [to] the victim" of such infringement." *Stabilisierungfonds*, 647 F.2d at 207. In

9   addition Adobe's allegations, which specify the conduct in which Blue Source engaged such that

10  Blue Source could be held jointly and severally liable, are stated with sufficient factual specificity.

11  *See Iqbal*, 556 U.S. at 678. Because Adobe sufficiently alleges a theory of joint and several

12  liability, the Court DENIES Blue Source's motion to dismiss this claim.

### IV. CONCLUSION

14          For the reasons stated above, the Court DENIES Blue Source's Motion.

15  **IT IS SO ORDERED.**

16

17  Dated: August 31, 2015

18  _____

19  LUCY H. KOH
    United States District Judge

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California